## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **GENE SIDORE, derivatively on behalf of NIC, INC.,** ) ) ) | |
| **Plaintiff,** ) ) | **Case No. 2:10-cv-02466-JWL-DJW** <br> **Judge John W. Lungstrum** |
| **vs.** ) ) | |
| **WILLIAM F. BRADLEY, JR; JOHN L. BUNCE, JR.; ART N. BURTSCHER; DANIEL J. EVANS; JEFFERY S. FRASER; ROSS C. HARTLEY; HARRY H. HERINGTON; ALEXANDER C. KEMPER; STEPHEN M. KOVZAN; WILLIAM M. LYONS; and PETE WILSON,** ) ) ) ) ) ) ) ) | |
| **Defendants,** ) ) | |
| **and** ) ) | |
| **NIC, INC.,** ) ) | |
| **Nominal Defendant.** ) | |

## FINAL JUDGMENT AND ORDER
## APPROVING DERIVATIVE SETTLEMENT

*Whereas*, the Settling Parties entered into a March 21, 2011, Stipulation of Settlement ("Settlement Agreement") of the above-captioned action (the "Derivative Litigation"), which (together with all of its exhibits) is fully and entirely incorporated herein by reference ("Settlement Agreement"); and

*Whereas*, the Court entered a July 8, 2011, Order Preliminarily Approving Settlement, Directing Notice to Stockholders, and Setting Hearing to Approve Settlement (the "Hearing Order"), preliminarily finding that the proposed settlement is sufficient to warrant publishing

Notice to Current NIC Stockholders, scheduling a Final Settlement Hearing and providing those persons identified as Stockholders with an opportunity to object to the proposed settlement; and

*Whereas,* this Court held a Final Settlement Hearing on October 11, 2011, pursuant to the Court's Hearing Order; it appearing that due notice of such hearing has been given in accordance with the Hearing Order (the "Notice"); the Court having heard and considered evidence in support of the proposed Settlement; the respective parties having appeared and been heard through their attorneys of record at the hearing; an opportunity to be heard having been given to all other persons or entities requesting to be heard in accordance with the Hearing Order; the Court having determined that Notice of the Settlement provided pursuant to the Hearing Order was adequate and sufficient and constituted the best practicable notice; the Court having made an express determination that there is no just reason for delay; and the entire matter of the proposed Settlement having been heard and considered by the Court;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED this 11th day of October, 2011 as follows:

1.      For purposes of this Order Approving Derivative Settlement, the Court adopts and incorporates by reference the definitions in the Settlement Agreement.

2.      Plaintiff has held stock in NIC continuously since the commencement of this Derivative Litigation and otherwise has standing to prosecute this Derivative Litigation on behalf of NIC and its Stockholders.

3.      This Court has jurisdiction to approve the Settlement Agreement and its exhibits.

4.      The Settlement Agreement and the proposed Settlement are approved as fair, reasonable, and adequate, consistent and in compliance with all applicable requirements of United States law, including the United States Constitution (including the Due Process Clause), the Federal Rules of Civil Procedure, the Rules of the Court, and any other applicable law, and are in the best interests of NIC and its Stockholders.

5.      The Parties and their counsel are directed to implement and consummate the Settlement Agreement according to its terms and provisions.

6.      The Settlement Agreement is binding on – and, as to all claims and issues that have or could have been raised in this Derivative Litigation, has *res judicata* and other preclusive effect in all pending and future lawsuits or other proceedings maintained by or on behalf of – the Settling Parties and Released Persons, as well as their past, present and future parents, subsidiaries, predecessors, successors, assigns and affiliates, and each of their respective past, present and future officers, directors, employees, agents, representatives, attorneys, heirs, administrators, executors, insurers, predecessors, successors and assigns, or any of them, including any person or entity controlled by or controlling or under the control of any of them.

7.      Plaintiff's Counsel and Plaintiff brought the Derivative Litigation in good faith and have adequately represented the interests of NIC and its Stockholders for purposes of entering into and implementing the settlement.

8.      Either NIC or counsel for Individual Defednants who are current NIC officers or directors has filed with the Court proof of mailing the Notice consistent with the directive in the Hearing Order.  The Court finds that the Notice mailed to NIC's Stockholders pursuant to, and in the manner directed by, the Hearing Order (i) was reasonably calculated, under the circumstances, to fully and accurately inform NIC's Stockholders of the pendency of the Derivative Litigation, all material elements of the Derivative Litigation, the proposed Settlement, their right to object to the proposed Settlement, and their right to appear and be heard in connection with the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement and (ii) constituted valid, due, and sufficient notice to all of NIC's Stockholders in this Derivative Litigation.

9.      The Notice provided to NIC's Stockholders in this Derivative Litigation and the manner in which the Notice was mailed, constituted the best practicable notice and satisfied the

requirements of the Federal Rules of Civil Procedure (including Rule 23.1), the United States Constitution (including the Due Process Clause) and any other applicable law.

10.     The text of Plaintiff's and NIC Stockholders' Release of the Released Persons from the Settlement Agreement is expressly incorporated in all respects and in its entirety, and forever discharges the Released Persons from any claims or liabilities arising from or relating to the matters covered by the release as follows:  As of the Final Settlement Date, Plaintiff on his own behalf, derivatively on behalf of NIC, and, by operation of the Judgment, on behalf of Current NIC Stockholders and all persons who have held NIC stock at any point in the past, hereby releases and discharges the Released Persons from, and shall not now or hereafter institute, participate in, maintain, maintain a right to, or assert against the Released Persons, either directly or indirectly, derivatively, on their own behalf, or on behalf of any other person or entity, any and all causes of action, claims (including Unknown Claims), damages, awards, equitable, legal, and administrative relief, interest, demands or rights (including, without limitation, claims for rescission, restitution, unjust enrichment or all damages of any kind, including those in excess of actual damages), whether based on federal, state, or local law, statute, ordinance, regulation, contract, common law, or any other source, that have been, could have been, or might hereafter be alleged or asserted against the Released Persons in the Derivative Litigation or in any other court action or before any administrative body, tribunal, arbitration panel, or other adjudicatory body that relate in any way, directly or indirectly, to the allegations contained in the Complaint, including, without limitation, for the period from NIC's initial public offering through the date of this Agreement:

    (1)     any or all of the acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations that have been, may be or could be directly or indirectly alleged, asserted, described, set forth or referred to in the Derivative Litigation;

(2)     any SEC filing by NIC and/or the Individual Defendants (collectively, individually, or in some combination of individuals);

(3)     any forward-looking statement made by NIC and/or the Individual Defendants (collectively, individually, or in some combination of individuals);

(4)     any public disclosures of any sort made by NIC and/or the Individual Defendants (collectively, individually, or in some combination of individuals);

(5)     the expense reporting or requests for reimbursement of any NIC officers, directors and employees (including, without limitation, the Individual Defendants), including without limitation any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations made or allegedly made in connection with or directly or indirectly relating to NIC's financial statements, disclosures, public statements and press releases, and/or internal financial controls, record-keeping or reporting mechanisms;

(6)     the salaries, bonuses, and termination or other payments paid to NIC's present and former executives and/or directors (*i*) at any time before the date on which this Settlement becomes effective or (*ii*) if paid pursuant to an obligation entered into by NIC and/or the Individual Defendants (collectively, individually, or in some combination of individuals) before the date on which this Release becomes effective, then at any future time;

(7)     the supervision and oversight conducted by NIC officers and directors of NIC's management and affairs, including, without limitation, any review, inquiry, investigation, look-back, or audit (or any obligation to conduct any or any further review, inquiry, investigation, look-back, or audit, or to

5

seek reimbursement or recovery of any expense, costs or proceeds of any related party transactions) of the expense reporting or reimbursement or recovery of expenses or proceeds of related party transactions of or by any NIC officers, directors and employees (including, without limitation, the Individual Defendants) made (or not made) by or at the direction of NIC officers and/or directors;

(8)     all claims relating in any way, directly or indirectly, to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences or oral or written statements or representations in connection with NIC's 2009 reincorporation in Delaware;

(9)     all claims relating in any way, directly or indirectly, to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences or oral or written statements or representations in connection with the SEC's investigation of NIC and certain of NIC's officers and directors;

(10)    all claims relating in any way, directly or indirectly, to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences or oral or written statements or representations in connection with the Settlement Agreement or the settlement of this Derivative Litigation (including, without limitation, all claims respecting the negotiation and execution of this Agreement);

(11)    all claims that the Individual Defendants are in any way liable or obligated to reimburse NIC for amounts that NIC paid to the SEC in penalties and disgorgement;

(12)    except as provided in this Agreement, any and all claims for attorneys' fees, expert witness fees and/or other costs or disbursements incurred by Plaintiff's Counsel or any other counsel representing Plaintiff in this

Derivative Litigation, or by Plaintiff in this Derivative Litigation, or any of them, in connection with or in any way related to this Action and/or the settlement of this Derivative Litigation; and/or

(13)   any breaches of fiduciary duty (or other duty placed upon corporate directors and officers by common law or statute) and/or obligations under federal or state law, including the United States securities laws.

11.   This Order shall have no effect on any and all rights or claims the Released Persons may have under any policies of insurance or for indemnification, including attorney's fees and costs; and nothing in this Order shall be construed to prevent or impede the right of any Settling Party to bring suit to enforce this Agreement.

12.   Plaintiff expressly understands this release includes Unknown Claims, and that principles of law in some jurisdictions, such as Section 1542 of the Civil Code of the State of California, provide that a general release does not extend to claims that a creditor does not know or suspect to exist in his or her favor at the time of executing the release, and that, if known by him or her, must have materially affected his settlement with the debtor.  This understanding notwithstanding, the Settling Parties and Current NIC Stockholders expressly waive any and all provisions, rights and benefits conferred by any law of any state or territory of the United States or of any other country, or any principle of common law, that is similar, comparable, or equivalent to California Civil Code §1542.   In connection with this release, Plaintiff acknowledges that he is aware that he may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those that he now knows or believes to be true with respect to the matters released herein.  Nevertheless, it is the intention of the Settling Parties fully, finally, and forever to settle and release all such matters, and all claims relating thereto, including Unknown Claims, that exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action or proceeding) with respect to the matters released.

13.    The text of Mr. Fraser's Release of NIC from the Settlement Agreement is expressly incorporated in all respects and in its entirety, and forever discharges the Released Persons from any claims or liabilities arising from or relating to the matters covered by the release as follows: As of the Final Settlement Date, Mr. Fraser, for himself and his successors, heirs, agents, and assigns, hereby releases and discharges NIC and its Related Persons from any and all causes of action, claims (including Unknown Claims), damages, awards, equitable, legal, and administrative relief, interest, demands or rights (including, without limitation, claims for rescission, restitution, unjust enrichment or all damages of any kind, including those in excess of actual damages), whether based on federal, state, or local law, statute, ordinance, regulation, contract, by-law, common law, or any other source, that have been, could have been, or might hereafter be alleged or asserted against NIC or its Related Persons in the Derivative Litigation, in the SEC enforcement action (*Securities and Exchange Commission v. NIC Inc., et al.*, 2:11-cv-02016-EFM-JPO (D. Kan.) ("SEC Enforcement Action")), or in any other court action or before any administrative body, tribunal, arbitration panel, or other adjudicatory body that arise out of or relate in any way, directly or indirectly, to the facts alleged in the Complaint, including, without limitation, for the period from NIC's initial public offering through the date of this Agreement:

      (1)    any or all of the acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations that have been, may be or could be directly or indirectly alleged, asserted, described, set forth or referred to in the Derivative Litigation;

      (2)    any SEC filing by NIC and/or the Individual Defendants (collectively, individually, or in some combination of individuals);

      (3)    any forward-looking statement made by NIC and/or the Individual Defendants (collectively, individually, or in some combination of individuals);

(4)   any public disclosures of any sort made by NIC and/or the Individual Defendants (collectively, individually, or in some combination of individuals);

(5)   the expense reporting or requests for reimbursement of business expenses by Mr. Fraser or any other NIC officers, directors and employees (including, without limitation, the Individual Defendants), including without limitation any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations made or allegedly made in connection with or directly or indirectly relating to NIC's financial statements, disclosures, public statements and press releases, and/or internal financial controls, record-keeping or reporting mechanisms;

(6)   the salaries, bonuses, and termination or other payments paid to NIC's present and former executives and/or directors (*i*) at any time before the date on which this Settlement becomes effective or (*ii*) if paid pursuant to an obligation entered into by NIC and/or the Individual Defendants (collectively, individually, or in some combination of individuals) before the date on which this Release becomes effective, then at any future time;

(7)   any review, inquiry, investigation, look-back, or audit (or any obligation to conduct any or any further review, inquiry, investigation, look-back, or audit, or to seek reimbursement or recovery of any expense, costs or proceeds of any related party transactions) of the expense reporting or reimbursement or recovery of expenses or proceeds of related party transactions of or by Mr. Fraser or any other NIC officers, directors, and employees (including, without limitation, the Individual Defendants) made (or not made) by or at the direction of NIC officers and/or directors;

9

(8)      all claims relating in any way, directly or indirectly, to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences or oral or written statements or representations in connection with NIC's 2009 reincorporation in Delaware;

(9)      all claims relating in any way, directly or indirectly, to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences or oral or written statements or representations in connection with the SEC's investigation of NIC and certain of NIC's officers and directors;

(10)     all claims relating in any way, directly or indirectly, to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences or oral or written statements or representations in connection with the Settlement Agreement or the settlement of this Derivative Litigation (including, without limitation, all claims respecting the negotiation and execution of this Agreement);

(11)     all claims that NIC is in any way liable or obligated to reimburse or indemnify Mr. Fraser for amounts that Mr. Fraser paid to the SEC in penalties and disgorgement;

(12)     any and all future claims for indemnification or advancement of attorneys' fees, expert witness fees and/or other costs or disbursements incurred by Mr. Fraser or any counsel representing Mr. Fraser in any matter arising out of or related to the facts alleged in the Complaint, except for any remaining attorney's fees, costs and disbursements incurred or that may be incurred in connection with the Derivative Litigation or the SEC Enforcement Action; and/or

(13)   any breaches of fiduciary duty (or other duty placed upon corporate directors and officers by common law or statute) and/or obligations under federal or state law, including the United States securities laws.

14.   In connection with this release, Mr. Fraser acknowledges that he is aware that he may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those that he now knows or believes to be true with respect to the matters released herein.  Nevertheless, it is the intention of Mr. Fraser fully, finally, and forever to settle and release all such matters, and all claims relating thereto, including Unknown Claims, that exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action or proceeding) with respect to the matters released.  Mr. Fraser acknowledges that the inclusion of Unknown Claims in this release was separately bargained for and constitutes a key element of this Settlement.

15.   Notwithstanding Section 13(12) above, Mr. Fraser is not releasing any claims he may have for indemnification or reimbursement of expenses from the Insurer under any policy of insurance issued to NIC and/or its officers, directors, and employees, with respect to any future claims, causes of action or relief arising out of or related to the facts alleged in the Complaint. Moreover, for the avoidance of doubt, by the release above Mr. Fraser does not release and expressly reserves any claim for indemnity, advancement or reimbursement of expenses as against NIC and/or the Insurer for claims that do not arise out of or relate to the facts alleged in the Complaint and/or the SEC Enforcement Action.

16.   The text of NIC's Release of Mr. Fraser from the Settlement Agreement is expressly incorporated in all respects and in its entirety, and forever discharges the Released Persons from any claims or liabilities arising from or relating to the matters covered by the release as follows:  As of the Final Settlement Date, NIC for itself and its successors, agents and assigns, hereby releases and discharges Mr. Fraser and his Related Persons from any and all causes of action, claims (including Unknown Claims), damages, awards, equitable, legal, and

administrative relief, interest, demands or rights (including, without limitation, claims for rescission, restitution, unjust enrichment or all damages of any kind, including those in excess of actual damages), whether based on federal, state, or local law, statute, ordinance, regulation, contract, by-law, common law, or any other source, that have been, could have been, or might hereafter be alleged or asserted against Mr. Fraser or his Related Persons in the Derivative Litigation, in the SEC enforcement action (*Securities and Exchange Commission v. NIC Inc., et al.*, 2:11-cv-02016-EFM-JPO (D. Kan.)), or in any other court action or before any administrative body, tribunal, arbitration panel, or other adjudicatory body that arise out of or relate in any way, directly or indirectly, to the facts alleged in the Complaint, including, without limitation, for the period from NIC's initial public offering through the date of this Agreement:

(1)     any or all of the acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations that have been, may be or could be directly or indirectly alleged, asserted, described, set forth or referred to in the Derivative Litigation;

(2)     any SEC filing by NIC, Mr. Fraser and/or the other Individual Defendants (collectively, individually, or in some combination of individuals);

(3)     any forward-looking statement made by NIC, Mr. Fraser and/or the other Individual Defendants (collectively, individually, or in some combination of individuals);

(4)     any public disclosures of any sort made by NIC, Mr. Fraser and/or the other Individual Defendants (collectively, individually, or in some combination of individuals);

(5)     the expense reporting or requests for reimbursement of business expenses by Mr. Fraser or any other NIC officers, directors and employees (including, without limitation, the Individual Defendants), including without limitation any or all acts, omissions, nondisclosures, facts,

matters, transactions, occurrences, or oral or written statements or representations made or allegedly made in connection with or directly or indirectly relating to NIC's financial statements, disclosures, public statements and press releases, and/or internal financial controls, record-keeping or reporting mechanisms;

(6)    the salaries, bonuses, and termination or other payments paid to NIC's present and former executives and/or directors (*i*) at any time before the date on which this Settlement becomes effective or (*ii*) if paid pursuant to an obligation entered into by NIC and/or the Individual Defendants (collectively, individually, or in some combination of individuals) before the date on which this Release becomes effective, then at any future time;

(7)    any review, inquiry, investigation, look-back, or audit (or any obligation to conduct any or any further review, inquiry, investigation, look-back, or audit, or to seek reimbursement or recovery of any expense, costs or proceeds of any related party transactions) of the expense reporting or reimbursement or recovery of expenses or proceeds of related party transactions of or by Mr. Fraser or any other NIC officers, directors, and employees (including, without limitation, the Individual Defendants) made (or not made) by or at the direction of NIC officers and/or directors;

(8)    all claims relating in any way, directly or indirectly, to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences or oral or written statements or representations in connection with NIC's 2009 reincorporation in Delaware;

(9)    all claims relating in any way, directly or indirectly, to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences or oral

or written statements or representations in connection with the SEC's investigation of NIC and certain of NIC's officers and directors;

(10)    all claims relating in any way, directly or indirectly, to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences or oral or written statements or representations in connection with the Settlement Agreement or the settlement of this Derivative Litigation (including, without limitation, all claims respecting the negotiation and execution of this Agreement);

(11)    all claims that Mr. Fraser is in any way liable or obligated to reimburse or indemnify NIC for any amounts that NIC has paid or will pay in connection with the SEC Enforcement Action or the Derivative Litigation, including but not limited to any amounts that NIC paid to the SEC in penalties and all reasonable legal fees and other reasonable defense costs advanced on Mr. Fraser's behalf; and/or

(12)    any breaches of fiduciary duty (or other duty placed upon corporate directors and officers by common law or statute) and/or obligations under federal or state law, including the United States securities laws.

17.    In connection with this release, NIC acknowledges that it is aware that it may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those that it now knows or believes to be true with respect to the matters released herein. Nevertheless, it is the intention of NIC fully, finally, and forever to settle and release all such matters, and all claims relating thereto, including Unknown Claims, that exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action or proceeding) with respect to the matters released. NIC acknowledges that the inclusion of Unknown Claims in this release was separately bargained for and constitutes a key element of this Settlement.

18.     The Court hereby permanently bars and enjoins Plaintiff and Current NIC Stockholders, or any of their respective representatives, trustees, successors, heirs and assigns, from filing, commencing, prosecuting, intervening in, participating in (as a nominal defendant or otherwise), or receiving any benefits or other relief from, any other lawsuit, arbitration, or administrative, regulatory or other proceeding or order against the Released Persons in any jurisdiction based on or relating to the claims and causes of action that are released by the Settlement Agreement.

19.     This Order, the Final Judgment, the Settlement Agreement any of its terms and provisions, any of the negotiations or proceedings connected with it, any of the documents or statements referred to in it, and any proceedings taken pursuant to it:

  a.     shall not be offered or received against any of the Individual Defendants or NIC as evidence of or construed as or deemed to be evidence of any presumption, concession or admission by any of the Individual Defendants or NIC with respect to the truth of any fact alleged by any of the plaintiff or the validity of any claim that has been or could have been asserted in the Derivative Litigation or in any litigation or the deficiency of any defense that has been or could have been asserted in the Derivative Litigation or in any litigation, or of any liability, negligence, fault, or wrongdoing of the Individual Defendants or NIC;

  b.     shall not be offered or received against any of the Individual Defendants or NIC as evidence of a presumption, concession or admission of fault, misrepresentation or omission with respect to any statement or written document approved or made by any Individual Defendant or NIC;

  c.     shall not be offered or received against the Individual Defendants or NIC as evidence of a presumption, concession, or admission with respect to any liability, negligence, fault, or wrongdoing, or in any way referred to

for any other reason as against any of the Defendants, in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Settlement Agreement; *provided however*, that if the Settlement Agreement is approved by the Court, this Order, the accompanying Final Judgment or the Settlement Agreement may be filed in any action against or by any Settling Party or Released Person to support a defense of *res judicata*, collateral estoppel, release, waiver, good faith settlement, judgment bar or reduction, full faith and credit, or any other theory of claim preclusion, issue preclusion, or similar defense or counterclaim;

d.      shall not be construed against the Individual Defendants or NIC as an admission or concession that the consideration to be given hereunder represents relief which could be or would have been granted after trial; and

e.      shall not be construed as or received in evidence as an admission, concession or presumption against Plaintiff that any of their claims are without merit, or that any defenses asserted by the Individual Defendants or NIC have any merit, or that Plaintiff would not have been able to prevail on the substantive claims in the Derivative Complaint.

20.     Without affecting the finality of this Order Approving Derivative Settlement for purposes of appeal, the Court expressly retains continuing and exclusive jurisdiction as to all matters relating to the administration, consummation, enforcement and interpretation of the Stipulation and all exhibits attached to the Settlement Agreement, the Final Judgment and Order Approving Settlement and for any other necessary purpose; provided however, that nothing in this subsection shall restrict the ability of the Settling Parties to exercise their rights under paragraph 21.

21.     The terms and provisions of the Stipulation and all exhibits attached to the Settlement Agreement may be amended, modified or expanded by agreement of the Settling Parties and approval of the Court; provided however, that the Settling Parties are authorized, without further approval from the Court, to agree to and adopt such amendments, modifications and expansions of the Stipulation and all exhibits attached to the Settlement Agreement as (i) are consistent with this Final Judgment and this Order Approving Derivative Settlement and (ii) do not limit the rights of Plaintiff, the Individual Defendants, NIC and/or the NIC Stockholders under the Settlement Agreement.  Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of the Settlement Agreement.

22.     Plaintiff's Counsel are hereby awarded $495,000 in fees and expenses and Plaintiff is awarded $5,000 as a Case Contribution Award, which sums the Court finds to be fair and reasonable and a recognition of the benefits provided to NIC as a result of the prosecution and settlement of the Derivative Litigation.

23.     Neither NIC nor the Individual Defendants, nor any of their respective past, present and future parents, subsidiaries, predecessors, successors and assigns, nor any of their respective past, present and future officers, directors, partners, principals, employees, agents, representatives, attorneys, heirs, administrators, executors, insurers, predecessors, successors and assigns, or any of them, shall be liable for or obligated to pay any fees, expenses, costs or disbursements to, or incur any expense on behalf of, any person, either directly or indirectly, in connection with this Derivative Litigation, the Settlement Agreement, or the proposed settlement, other than as expressly provided for in the Settlement Agreement.

24.     The Parties and their counsel are directed to implement and consummate the Settlement Agreement according to its terms and provisions.

25.     The Court finds no just reason for delay in entering Final Judgment as to NIC and the Individual Defendants in accordance with the terms of the Settlement Agreement and the Order Approving Derivative Settlement.

26.     The claims in this Derivative Litigation are dismissed on the merits and with prejudice according to the terms (including the releases) set forth in the Settlement Agreement and in the Order Approving Derivative Settlement, without costs to any party except as provided therein.

FINAL JUDGMENT is hereby entered with respect to the Settling Parties and Released Persons in accordance with Federal Rule of Civil Procedure 58 this 11th day of October, 2011.

s/ John W. Lungstrum
THE HONORABLE JOHN W. LUNGSTRUM
United States District Judge